IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

UNITED STATES OF AMERICA,
Plaintiff,

v.

$11,905.00 in U.S. CURRENCY,
Defendant.

Civil Action No. 1:19-cv-688

## VERIFIED COMPLAINT OF FORFEITURE

NOW COMES Plaintiff, the United States of America, by and through Matthew G.T. Martin, United States Attorney for the Middle District of North Carolina, and respectfully states as follows:

1.     This is a civil action *in rem* brought to enforce the provisions of 21 U.S.C. § 881(a)(6) for the forfeiture of the defendant property, which was furnished or intended to be furnished in exchange for a controlled substance, in violation of Title II of the Controlled Substances Act, 21 U.S.C. §§ 801 *et seq*., or represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate violation of the Controlled Substances Act.

2.     This action is also brought to enforce the provisions of 18 U.S.C. § 981(a)(1)(C) for the forfeiture of the aforesaid defendant property which constitutes or was derived from proceeds traceable to an offense constituting specified unlawful activity as defined in 18 U.S.C. § 1956(c)(7), or a conspiracy to commit such offense, specifically

the exchange of a controlled substance in violation of state or federal law.

3.     The defendant property is $11,905.00 in U.S. Currency, which was seized on February 5, 2019, in Greensboro, North Carolina, while located within the jurisdiction of this Court, and has been deposited to the United States Marshals Service Seized Asset Deposit Fund.

4.     Plaintiff brings this action *in rem* in its own right to forfeit and condemn the defendant property.    This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

5.     Venue is proper in this district pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395, because the defendant property was seized while located in the jurisdiction of this Court, or one or more of the acts giving rise to forfeiture occurred in this district.

6.     Upon the filing of this complaint, Plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which Plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

7.     The facts and circumstances supporting the seizure and forfeiture of the defendant property are contained in Exhibit A, attached hereto and wholly incorporated herein by reference.

WHEREFORE, the United States of America prays that process of a Warrant for Arrest and Notice *In Rem* be issued for the arrest of the defendant property; that due notice be given to all parties to appear and show cause why the forfeiture should not be decreed; that judgment be entered declaring the defendant property be forfeited to the United States

of America for disposition according to law; and that the United States of America be granted such other relief as this Court may deem just and proper, together with the costs and disbursements of this action.

This the 11th day of July, 2019.

Respectfully submitted,

MATTHEW G.T. MARTIN
United States Attorney


/s/ Steven N. Baker
Steven N. Baker
Assistant United States Attorney
NCSB #36607
101 S. Edgeworth Street, 4th Floor
Greensboro, NC   27401
Phone: (336)333-5351
Email: steve.baker3@usdoj.gov

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the United States of America, that the contents of the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

Daniel Chelemer
Special Agent
Federal Bureau of Investigation

# DECLARATION

I, Daniel Chelemer, hereby state, pursuant to 28 U.S.C. § 1746, under penalty of perjury and pursuant to the laws of the United States, that the following is true and correct to the best of my knowledge, information, and belief:

1.      I am a Special Agent with the Federal Bureau of Investigation (FBI) and have been so employed since 2018.  I am currently assigned to the Charlotte Division, Greensboro Resident Agency.  In this capacity, I am authorized to investigate matters involving violations of federal law.

2.      During my tenure as an agent, I have received extensive training related to criminal investigations.  Prior to joining the FBI, I was employed as a Police Officer in Raleigh, North Carolina, for over six years.  As a police officer, I investigated numerous crimes to include the sale and distribution of illegal narcotics.  I also received extensive training regarding responding to and investigating illegal narcotic sales and distribution offenses.  I have also participated in the execution of numerous search and arrest warrants in a variety of criminal investigations.  I received my Advanced Law Enforcement Certificate from the Criminal Justice Training and Standards Commission of the North Carolina Department of Justice in 2018.

3.      My experience includes various investigations and several arrests pertaining to narcotics, including prescription pills, marijuana, heroin, ecstasy, methamphetamine, and cocaine.  These cases have led to successful prosecutions and convictions for various charges included in the Violations of Controlled Substances Act.  I have made several narcotics related



arrests.  I have assisted numerous investigations where search warrants lead to the seizure of illegal narcotics.  I have made numerous traffic stops where narcotics were located in varying amounts.  As an investigator, I have obtained and served search warrants which lead to the seizure of narcotics and/or firearms.

4.　　This declaration is submitted in support of a Verified Complaint of Forfeiture of $11,905.00 in U.S. Currency, seized on February 5, 2019 from a residence on Rocky Knoll Circle, Greensboro, NC, 27406 (the "Residence").

## Investigative Background

5.　　On December 5, 2018, FBI Task Force Officer (TFO) John Price was contacted by Sergeant Chris Crane, Alamance County Sheriff's Office (ACSO) in reference to a methamphetamine distribution organization.  The ACSO had made several recent arrests of subjects for various methamphetamine distribution felony charges.  During interviews of these subjects, they identified their supplier as a subject known as "Javier."

6.　　On December 6, 2018, TFO Price spoke with an individual named Lindsay Marie Shaver regarding her involvement in the distribution of methamphetamine.  Shaver was questioned specifically about her knowledge of "Javier."  Shaver stated she knew "Javier" and had been to his residence to purchase methamphetamine ten to twelve times. Shaver stated she typically purchased between one half to one ounce of methamphetamine from "Javier" per visit.  Shaver indicated that "Javier's" residence, where she purchased the methamphetamine, was the Residence.

7.     On December 16, 2018, TFO Price was provided a telephone number for "Javier," and utilizing law enforcement databases identified "Javier" as Avisahl Medina Diaz (DIAZ). DIAZ's address is listed as the Residence. TFO Price also displayed a picture of DIAZ from the NC Department of Motor Vehicles to a Confidential Human Source (CHS), who confirmed that DIAZ was "Javier."

8.     On February 5, 2019 members of the FBI and the ACSO conducted an operation to interdict a delivery of methamphetamine. An FBI CHS was utilized to order $2,000 worth of methamphetamine from DIAZ, to be delivered in Alamance County. During the operation, FBI surveillance personnel observed a Hispanic male enter the Residence and exit with an item concealed in a black shirt. The male was followed from the Residence until the vehicle was stopped by ACSO deputies on Interstate 40 East. A K-9 officer was contacted to assist with the investigative detention. A trained narcotic detection dog (K-9) was utilized to conduct a free air sniff around the vehicle. The K-9 officer observed the K-9 display a positive alert to the presence of the odor of a controlled substance emanating from the vehicle. A search was conducted of the vehicle, and five plastic baggies of a substance that field tested positive for methamphetamine were located.

## Search of the Residence

9.     As a result of the traffic stop and surveillance of the male obtaining the item at the Residence (which was believed to be the methamphetamine confiscated during the traffic stop), a search warrant was sought and obtained from Guilford County Superior Court, to be executed at the Residence. The following law enforcement personnel

participated in the search: FBI Special Agents (SAs) J.L. Pickford, Norman Kuylen, Phillip W. Spainhour, and myself; TFOs Price, Gerald Gordy, Travis Montgomery, Max Wooten, Whitson Frye, A.D. Phillips, Samuel Ray, Nicholas Combs, Keith Springs, and Robert Finch; Evidence Control Technician Teresa Cookson; Bureau of Alcohol Tobacco Firearms and Explosives TFOs Kyle McPherson and Adam Snow; and Greensboro Police Department (GPD) Officers T. Brame and C. Catterton.

10.    On February 5, 2018, at approximately 10:24pm, law enforcement personnel approached the Residence in vehicles, led and followed by marked GPD patrol vehicles with their emergency lights activated.  Law enforcement personnel exited their vehicles and approached the Residence on foot and formed a perimeter around the Residence.  Law enforcement personnel were armed and were all wearing ballistic vests with visible markings clearly identifying them as law enforcement officers.

11.    As the entry team started to enter the Residence, they encountered an adult female, who later identified herself as Anayeli Gonzalez Ortega (ORTEGA), and two children (one male and one female).  ORTEGA and the children were called out of the Residence, and secured in the front yard by TFO Phillips and SA Kuylen.  The entry team then cleared the Residence and did not locate any additional persons inside.

12.    Law enforcement officers then searched the Residence.  As relates to this Declaration, law enforcement officers located the following:

> a.  From a master bedroom closet (Closet 1): drug paraphernalia (glass pipe inside a gray and pink bag), 9 cell phones, 2 tablets, and $11,905.00 in

4

U.S. currency. The cell phones, tablets, and U.S. Currency were located inside a locked safe. The U.S. currency was in multiple bundles of different denominations and amounts, wrapped in black rubber bands and/or plastic bags. **See exhibit 1**.

b. From a master bedroom closet (Closet 2): 629 grams of suspected methamphetamine in a clear plastic container with a blue lid. The substance was field tested and tested positive for methamphetamine. Officers located the methamphetamine in a closet cabinet. Photographs of the item were taken, not in place, along with photographs of a box containing plastic bags and an empty black handgun holster. The closet cabinet with the container of methamphetamine was in close proximity to several items of female clothing, shoes, jewelry, etc.

13.     Based upon my training and experience, the bundles of U.S. Currency found in the safe in Closet 1 are consistent with the way drug dealers store monies obtained through the sale of narcotics. They are also consistent with other bundles of currency that have been seized from DIAZ (see paragraph 22, below).

14.      Because the safe located in Closet 1 was locked, SA Kuylen asked ORTEGA if she knew the combination to the safe. ORTEGA stated that she did not know the combination. ORTEGA further stated that she did not have control or access to the safe.

15.     At approximately 11:42pm the safe was removed from the Residence to the front yard, where TFO Combs used an entry pry tool and a hatchet/hammer to open the

5

safe. At approximately 11:48pm, immediately after the safe was opened, its contents were photographed in place, as they appeared.

16. The separate bundles of U.S. currency were consolidated into a combined amount in the front yard of the Residence under poor lighting conditions, using a large trash bin as a make-shift desk for a flat surface. The initial count documented on the FD-597 Receipt for Property form was $11,165.00. After the U.S. currency was transported to the controlled, secured environment of the FBI Greensboro Resident Agency (RA), it was recounted and the total amount was corrected to $11,905.00.

17. In an outdoor shed at the Residence, officers located a Luger Intratec 9mm handgun, a small bag of methamphetamine, a Colt 45 magazine loaded with ammunition, and several boxes of ammunition.

18. Neither DIAZ nor ORTEGA is a citizen or legal resident of the United States, and neither is legally permitted to own or possess a handgun.

### Follow Up Interview of ORTEGA

19. On February 7, 2018, two days after the search of the Residence described above, TFO Price and I interviewed ORTEGA at the Residence at approximately 11:32am. ORTEGA was asked about the source of the money found in the safe in Closet 1. ORTEGA first stated that she did not know where the money came from. ORTEGA then stated that the money could be from a settlement that DIAZ received for a car accident.

20. ORTEGA was asked about her relationship with DIAZ. She explained that she met DIAZ when she moved to North Carolina, that DIAZ is the father of her daughter,

6

and that she and DIAZ live in the Residence together.  ORTEGA stated that she pays the rent and DIAZ pays the other bills.

## **Administrative Forfeiture Proceedings**

21.     FBI conducted a civil process seizure of the $11,905.00.  On April 12, 2019, FBI received a claim to the $11,905.00 from ORTEGA.  As a result, the administrative forfeiture process was terminated and the seizure was referred to the United States Attorney's Office on April 15, 2019, for judicial forfeiture.

## **Conclusion**

22.     On February 5 and February 7, 2019, ORTEGA made statements to law enforcement officers that the $11,905.00 in U.S. Currency seized from the safe found in the Residence was not hers.

23.     Further, on February 5, 2019, DIAZ was arrested by the ACSO, and approximately $10,000 in U.S. Currency was seized along with methamphetamine.  The $10,000 was bundled in a similar fashion to the $11,905.00 seized from the safe at the Residence.  For example, the rubber bands used in both sets of bundles were consistent.

24.     Based upon the foregoing, there is probable cause to believe that the $11,905.00 in U.S. currency seized from the Residence was furnished or intended to be furnished in exchange for a controlled substance or represents proceeds traceable to such an exchange, or was used or intended to be used to facilitate a violation of the Controlled Substances Act, and is therefore subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6) and 18 U.S.C. § 981(a)(1)(C).

This the 11th day of July, 2019.

Daniel Chelemer
Special Agent
Federal Bureau of Investigation

8



Exhibit 1